IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ERIC POWELL,                              )
AIS # 223888,                             )
                                          )
              Plaintiff,                  )
                                          )
       v.                                 )     CASE NO. 2:25-CV-156-WKW
                                          )            [WO]
JESSIE BETTS, *et al.*,                   )
                                          )
              Defendants.                 )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Eric Powell, an inmate with the Alabama Department of Corrections (ADOC) confined at Kilby Correctional Facility, brings this 42 U.S.C. § 1983 action for excessive force against three ADOC officials—Officer Jessie Betts, Captain Jenkins, and Captain Thomas (collectively, ADOC Defendants).  Plaintiff alleges that, on January 28, 2025, Officer Betts assaulted him while he was handcuffed and compliant and that, during the investigative phase of the incident, Captains Jenkins and Thomas sanctioned the assault.  The ADOC Defendants have moved to dismiss the complaint on multiple grounds.  (Doc. # 21.)  One ground is the absence of sufficient allegations to show Article III standing over the claims against Captains Jenkins and Thomas.  Another is Plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 (PLRA), 42

U.S.C. § 1997e. Plaintiff has opposed the motion to dismiss (Doc. # 26) and also has filed a motion to amend the complaint (Doc. # 25).

For the reasons explained, because the challenge to Article III standing is intertwined with the merits, its resolution will be deferred until the merits are reviewed. However, the court will not address the merits yet, as there is a factual dispute regarding exhaustion that requires an evidentiary hearing. The evidentiary hearing will be conducted by videoconference on October 22, 2025, at 1:30 p.m. Furthermore, the motion to amend the complaint will be granted.

## II. DISCUSSION

### A.    <u>The Original and Amended Complaints</u>

In response to the motion to dismiss challenging the allegations in the original complaint, Plaintiff filed both a brief in opposition (Doc. # 26) and a motion to amend the complaint (Doc. # 25). Plaintiff seeks to supplement the allegations in his complaint, and the ADOC Defendants have not submitted any opposition to the proposed amendment. Exercising its discretion, the court will grant the motion to amend, *see* Fed. R. Civ. P. 15(a)(2), and evaluate the motion to dismiss in light of the allegations contained in both the original and amended complaints.

There is no reason to prioritize procedural formality over substance by requiring the ADOC Defendants to file a new motion to dismiss. The amended complaint introduces additional factual allegations that are particularly beneficial for

reviewing the 42 U.S.C. § 1983 excessive force claims against Captains Jenkins and Thomas; it does not alter the fundamental nature of this action.

The facts alleged in the original and amended complaints are as follows. On January 28, 2025, Officer Betts informed Plaintiff that he needed to have his photograph taken for an identification card but that he first required a haircut. Plaintiff responded that his hair complied with the applicable regulations, as he had recently arrived from federal prison. (Doc. # 25 at 1–2.) Officer Betts insisted that Plaintiff would have to get a haircut regardless, after which Plaintiff requested to be placed in segregation. (Doc. # 25 at 2.)

Instead of placing Plaintiff in segregation, Officer Betts took Plaintiff to the prison barber shop, handcuffed Plaintiff, and directed him to sit in the barber chair. Unprovoked, Officer Betts "started choking" Plaintiff, while ordering an inmate to cut Plaintiff's hair, and continued to choke Plaintiff until he was unconscious. (Doc. # 25 at 2; *see also* Doc. # 1 at 3 (alleging that Officer Betts "assaulted and choked me out while I was non-combative, already restrained in handcuff[s]").) After Plaintiff regained consciousness, Officer Betts dragged him outside, gagged him, punched him twice in the face, and kicked him while he was on the floor, resulting in injuries to Plaintiff's elbow, wrist, and leg. (Doc. # 25 at 2–3.) Officer Betts then took Plaintiff to a nurse's station where Plaintiff reported the incident to a lieutenant,

who dismissed Plaintiff's complaint by saying Officer Betts "should have beat your ass." (Doc. # 25 at 3–4.)

Plaintiff was placed in segregation. While in segregation, Plaintiff requested to speak with "the captain" and was allowed to meet with Captains Jenkins and Thomas. (Doc. # 25 at 4.) Plaintiff described the incident involving Officer Betts. (Doc. # 25 at 4–5.) Captains Jenkins and Thomas, who had reviewed the camera footage of the incident, responded that Officer Betts "should have whipped [Plaintiff's] ass" and should have assaulted Plaintiff in a location that was not visible to the cameras. (Doc. # 25 at 5.)

On February 5, 2025, Plaintiff received disciplinary reports for allegedly threatening an officer and disobeying a direct order, which he disputes. (Doc. # 25 at 6.) Thereafter, Plaintiff was "called to the captain's office" where Captain Jenkins and an individual identified as Captain Lewis were present. Plaintiff was asked to give an oral statement, after which Captain Jenkins said again that Officer Betts "should have whipped [Plaintiff's] ass because [Plaintiff] had no business threatening Officer Betts." (Doc. # 25 at 6.) Plaintiff denied making any threats against Officer Betts. (Doc. # 25 at 6.) When Plaintiff asked if any action would be taken against Officer Betts, Captain Lewis advised him to file a grievance form. However, Plaintiff expressed skepticism about the effectiveness of such a form, stating that "it would only be thrown away." (Doc. # 25 at 7.)

Plaintiff brings a claim of excessive force, which is a proper claim under the Eighth Amendment. (Doc. # 1 at 2.) He seeks unspecified "financial compensation for mental and physical damages" against the ADOC Defendants. (Doc. # 1 at 4.) While Plaintiff does not state in which capacity he sues Defendants, it is presumed that Plaintiff is bringing individual-capacity claims, as official-capacity claims for monetary damages are barred by the Eleventh Amendment.[1]

## B.    Subject Matter Jurisdiction: Article III Standing

The ADOC Defendants argue that Plaintiff lacks Article III standing to sue Captains Jenkins and Thomas for excessive force under the Eighth Amendment due to allegations insufficient to establish causation.[2] (Doc. # 21 at 6.) Challenges to Article III standing implicate the court's subject matter jurisdiction. Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, such challenges can be either facial or factual. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). The ADOC Defendants' challenge is facial; therefore, the court must accept the complaint's and amended complaint's allegations as true. *See*

---

[1] Lawsuits seeking monetary damages against Alabama officials in their official capacities for alleged constitutional violations are barred by the Eleventh Amendment. This bar arises because these lawsuits are effectively against the State of Alabama, which has not waived its sovereign immunity for such claims. *See Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995).

[2] The ADOC Defendants state that, "[a]rguably, if the pleaded factual allegations are taken as true, [Plaintiff] has stated a valid Excessive Force claim against Betts." (Doc. # 21 at 6 n.1.)

*Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)); *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (observing that, for a Rule 12(b)(1) facial challenge, a plaintiff has "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised" (citation omitted)). However, "where the jurisdictional issues are intertwined with the substantive merits, the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other." *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 733 (11th Cir. 1982) (cleaned up).

A plaintiff cannot establish standing merely by alleging that he has been injured. To satisfy the causation element of Article III standing, a plaintiff must show that his injury is "fairly traceable" to the defendant's challenged conduct, but he does not have to show proximate causation. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (citation omitted). "Even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Id.* (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003)). At the "pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" as it is presumed on a motion to dismiss that "general allegations embrace those specific

facts that are necessary to support the claim." *Id.* at 1124 (citation and internal quotation marks omitted).

Here, the ADOC Defendants argue that "there are no specific allegations pertaining to Defendants Thomas and Jenkins identifying what actions or inactions are attributed to them that caused [Plaintiff's] injuries." (Doc. # 21 at 6.) Their argument challenges the absence of such allegations in the original complaint. However, Plaintiff now has amended his complaint to supplement those allegations. To summarize those supplemental allegations in the light most favorable to Plaintiff, he asserts that Captains Jenkins and Thomas, after reviewing the camera footage of the assault, sided with Officer Betts, openly approved the allegedly unprovoked beating of the handcuffed Plaintiff, and expressed their strong displeasure that the incident was captured on camera. Captain Jenkins later reiterated to Plaintiff his belief that the beating was justified and based that justification on a claim that Plaintiff "had no business threatening Officer Betts." (Doc. # 25 at 5–6.) Plaintiff denied that he threatened Officer Betts prior to the assault. (Doc. # 25 at 6.)

There are no allegations in the original or amended complaints that Captains Jenkins and Thomas participated directly in Officer Betts's alleged assault on Plaintiff or were present when it occurred. Therefore, Plaintiff's injuries are not fairly traceable to any direct participation by Captains Jenkins and Thomas in the alleged assault. But this does not end the matter.

Under 42 U.S.C. § 1983, liability may arise not only from a defendant's personal participation but also, in limited circumstances, from his actions or inactions taken in a supervisory role. As the Eleventh Circuit explained in *Myrick v. Fulton Cnty.*, "[s]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." 69 F. 4th 1277, 1297 (11th Cir. 2023). The amended complaint highlights that Jenkins and Thomas, as captains, played a role in the investigation. It details that they reviewed the camera footage, that Captain Jenkins was present during Plaintiff's oral statement regarding the incident, and that both communicated their resolution of the matter. (*See, e.g.*, Doc. # 25 at 5–6.) At the very least, a liberal construction of the allegations suggests their supervisory positions generally within the ADOC and specifically as to the incident in question. In fact, the ADOC Defendants acknowledge in their motion to dismiss that Captains Jenkins and Thomas were "supervisory correctional officers." (Doc. # 21 at 8.)

Article III standing must be assessed for each specific cause of action. *See Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("[I]t is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately."). Hence, it is important

initially to determine the nature of the claim.  There is some authority suggesting a narrow pathway to establish a causal connection for a § 1983 claim under a ratification theory, where a policymaker endorses a single incident of unconstitutional conduct by a subordinate.[3]  *See Huggins v. Sch. Dist. of Manatee Cnty.*, 2025 WL 2374371, at *10, ___ F.4th ____ (11th Cir. Aug. 15, 2025) (explaining that a single incident of misconduct cannot support a *Monell* ratification theory under § 1983 unless the "local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis" (citing *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015))); *see also Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022) (espousing the general rule that "allegations of a single incident of unconstitutional conduct cannot state a claim for supervisory liability, even when the conduct involves several subordinates" (citation omitted)).

The court finds it nearly impossible to disentangle the inquiries of "fairly traceable" (standing) and "causal connection" (merits) on the facts of this case.  The question of whether Plaintiff has alleged an injury that is fairly traceable to Captains Jenkins's and Thomas's alleged misconduct is closely linked to the core of Plaintiff's

---

[3] No other potential theory for a 42 U.S.C. § 1983 claim alleging supervisory liability can be gleaned from the allegations in the original and amended complaints.  *See Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (setting forth other methods for showing a causal connection between the alleged unconstitutional conduct of a subordinate and the actions of the supervisory official so as to establish § 1983 liability against the supervisor).

claims on the merits, namely, whether there is a causal connection between their alleged post-hoc approval of Officer Betts's alleged unprovoked assault on the handcuffed Plaintiff and the assault itself.    Given these circumstances, the court deems it appropriate to assume Article III standing, defer the analysis of standing until the merits review, and proceed to the analysis of PLRA exhaustion.

## C.    <u>The Affirmative Defense of PLRA Exhaustion</u>

In their motion to dismiss, the ADOC Defendants have raised the affirmative defense of failure to exhaust administrative remedies as required by the PLRA.  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (citing 42 U.S.C. § 1983).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Its purpose is to provide "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

1.    ***The Two-Step Process Under the PLRA for Deciding a Motion to Dismiss for Failure to Exhaust Administrative Remedies***

Exhaustion under the PLRA is a "standard affirmative defense" and is neither jurisdictional nor a pleading requirement. *Perttu v. Richards*, 605 U.S. 460, 469 (2025). "Deciding a motion to dismiss for failure to exhaust administrative remedies involves a two-step process." *McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025) (cleaned up).

In the first step, the court reviews the factual allegations presented in the defendant's motion to dismiss alongside those in the plaintiff's response. If there is a conflict, the court accepts the plaintiff's "version of the facts as true." *Id.* (quoting *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)). If dismissal is not warranted at the first step, the process moves to the second step, where the court "make[s] specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (quoting *Turner*, 541 F.3d at 1082). Once the district court resolves the disputed factual issues, it then determines whether, based on those findings, the prisoner has exhausted his available administrative remedies.[4] *Id.* (citing *Turner*, 541 F.3d at 1083). Throughout this two-step process, the burden is on the defendant

---

[4] No party has argued that the *Perttu* Court's pronouncement—"that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment," 605 U.S. at 479—which relates to *Turner*'s second step, is relevant here.

to prove that the plaintiff has not exhausted his "available administrative remedies." *Id.* (quoting *Turner*, 541 F.3d at 1082).

In this analysis, while the defendant initially must demonstrate the existence of an available administrative remedy, once this is established, the burden shifts to the plaintiff. *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020). The plaintiff must then show that the grievance procedure was "subjectively" and "objectively" unavailable to him. *Id.*

### 2.    *"Proper" Exhaustion*

The U.S. Supreme Court has held that the "[PLRA's exhaustion] provision 'requires proper exhaustion' of available prison grievance procedures, meaning a prisoner 'must complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bringing suit in federal court.'" *Perttu*, 605 U.S. at 465 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006)). "Proper" exhaustion means *all* the administrative steps are followed, including an appeal. *Allen v. Blakely*, 814 F. App'x 522, 526 (11th Cir. 2020) (quoting *Woodford*, 548 U.S. at 85). Determining the "boundaries of proper exhaustion" is done by examining "the requirements of the applicable prison grievance system." *McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025) (citation and internal quotation marks omitted).

12

### 3.    *The ADOC's Inmate Grievance Policy*

ADOC prisoners, like Plaintiff, are subject to the ADOC's Administrative

Regulation Number 406 (AR 406), which established an inmate grievance policy,

effective August 1, 2023.  (Doc. # 24-1.)  Under AR 406, copies of the policy and

necessary forms, such as the inmate grievance form and grievance appeal form, must

be readily accessible in each housing unit and law library.  AR 406 § V.A.  Grievance

boxes, which must be locked, are required to be placed in areas accessible by all

inmates.  AR 406 § V.A1.

Grievances generally must be submitted within ten days of the incident.

§ V.G.  However, § V.G. imposes no time limit for incidents involving "an allegation

of sexual abuse or sexual harassment," and § V.Z.1.a. exempts "an allegation of

sexual abuse, sexual harassment, or any verbal or physical abuse or harassment"

from the ten-day time limit.

For non-emergency grievances, the process starts when an inmate submits a

completed grievance form.  AR 406 § V.Z.1.a.  The institutional grievance officer

(IGO) must respond within ten days of receiving the grievance.  AR 406 § V.Z.1.d.

If the inmate disagrees with the decision, he must submit a written grievance appeal

form to the IGO within ten days of receiving the decision.  Failure to appeal is

considered acceptance of the decision. AR 406 § V.Z.1.e.  Appeals are reviewed by

the departmental guidance coordinator (DGC), who must issue a final decision on

13

the grievance's merits, remedies, and requests within sixty business days of receiving the appeal. This decision must confirm that the inmate has exhausted all available administrative remedies. AR 406 §§ V.Z.2.a–.b.

If the inmate marks the grievance as an emergency, the IGO will receive a determination from the warden whether it qualifies as such. If it does, the warden must promptly address and document the emergency and the actions taken. AR 406 § V.AA.1. There are some exceptions regarding which official must resolve the emergency grievance. For example, "[a]ny grievance alleging physical or sexual abuse of an inmate by staff shall be directed to the LESD [Law Enforcement Services Division] for resolution." AR 406 § V.AA.1.

If the inmate disagrees with the actions taken, he must submit his appeal within 24 hours of the decision. The DGC then must decide the appeal within 72 hours. AR 406 §§ V.AA.3.–4. Unless there is a showing of good cause, failing to appeal on time is considered either abandoning the grievance or accepting the decision. AR 406 § V.AA.3.

### 4.    *Analysis of Proper Exhaustion in the Two-Step Process*

In support of their motion to dismiss, the ADOC Defendants have submitted an affidavit from the DGC. The DGC attests that Plaintiff's allegations in the complaint are subject to AR 406's inmate grievance policy. Based upon her review

of the inmate grievance logs, the DGC confirms that Plaintiff "has not submitted an inmate grievance related to this complaint." (Doc. # 24-2 at 1.)

In his response, Plaintiff states that he submitted a grievance concerning the assault by Officer Betts on January 28, 2025, "by placing his form in the designated box within the correctional institution at Kilby Correctional Facility." (Doc. # 26 at 2.) He also has submitted a copy of the completed grievance form. (Doc. # 26-1 at 1.) Therefore, at the first step of the two-step process, conflicting facts exist, requiring the court to accept Plaintiff's version as true. *McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025).

At the second step, the court must "resolve the disputed factual issues related to exhaustion." *Id.* (quoting *Turner*, 541 F.3d at 1082). Therefore, an evidentiary hearing will be scheduled to resolve these disputes.

## D.    The Affirmative Defense of Qualified Immunity

The affirmative defense of qualified immunity can be asserted in a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Miller v. Palm Beach Cnty. Sheriff's Off.*, 129 F.4th 1329, 1333 (11th Cir. 2025). Here, Captains Jenkins and Thomas raise this defense in their motion to dismiss. However, due to the factual disputes regarding Plaintiff's exhaustion of administrative remedies, the determination of qualified immunity will be postponed until the issue of administrative exhaustion is resolved.

15

### III.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

(1)     Plaintiff's motion to amend the complaint (Doc. # 25) is GRANTED;

(2)     A videoconference evidentiary hearing to resolve the factual disputes regarding Plaintiff's exhaustion of administrative remedies is set for **October 22, 2025, at 1:30 p.m.**;

(3)     The courtroom deputy will provide the videoconference link prior to the hearing;

(4)     General Counsel for the Alabama Department of Corrections and the persons having custody of Plaintiff are DIRECTED to make Plaintiff available for the evidentiary hearing by videoconference, and General Counsel for the Alabama Department of Corrections should contact the courtroom deputy and provide the necessary information for receiving the videoconference link;

(5)     The Clerk of Court is DIRECTED to provide a copy of this Memorandum Opinion and Order to General Counsel for the Alabama Department of Corrections and the Office of the Attorney General; and

(6)     The Clerk of Court is DIRECTED to provide a court reporter for the evidentiary hearing.

DONE this 30th day of September, 2025.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE